UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America, | Case No. 19-cr-319 (ECT/TNL) |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| Humberto Rangel-Torres (2), | |
| Defendant. | |

Manda M. Sertich and Evan Gilead, Assistant United States Attorneys, United States Attorney's Office, 300 South Fourth Street, Suite 600, Minneapolis MN 55415 (for the Government); and

Daniel L. Gerdts, 221 Second Avenue South, Suite 705, Minneapolis, MN 55401 (for Defendant).

This matter is before the Court, United States Magistrate Judge Tony N. Leung, on Defendant Humberto Rangel-Torres's Motion to Suppress Electronic Surveillance Evidence (ECF No. 47), Motion to Suppress All Identifications of Defendant Obtained Through Unconstitutional Identification Procedures (ECF No. 48), and Motion to Suppress All Evidence Obtained From Unlawful Searches and Seizures. (ECF No. 49). These motions have been referred to the undersigned for a report and recommendation to the district court, the Honorable Eric C. Tostrud, District Judge of the United States District Court for the District of Minnesota, under 28 U.S.C. § 636 and D. Minn. LR 72.1.

Defendant is charged via indictment with Sex Trafficking of a Minor, in violation of 18 U.S.C. §§ 1591(a), (b)(2), and (c), and 1594(a) and (c) and Sex Trafficking by Force,

1

Fraud, or Coercion, in violation of 18 U.S.C. §§ 1591(a) and (b)(1) and 1594(a) and (c). (ECF No. 9). Defendant filed motions seeking suppression of: (1) evidence obtained through electronic surveillance; (2) eyewitness identifications; and (3) evidence seized following the execution of several search warrants. The Government opposes each motion.

A hearing was held on March 10, 2020. (ECF No. 62). The Court heard testimony from Detective Heather Jensen of the Bloomington Police Department and Special Agent Jeff Anderson of Homeland Security Investigation. The Court received into evidence: Government Exhibit 1 (photograph); Government Exhibit 2 (photograph); Government Exhibit 3 (photograph); Government Exhibit 4 (search warrant); Government Exhibit 5 (search warrant); Government Exhibit 6 (search warrant); Government Exhibit 7 (search warrant); and Government Exhibit 8 (search warrant). Post-hearing briefing is complete, (ECF Nos. 71 and 73), and the motion is ripe for a determination by the Court. Based upon all the files, records, and proceedings herein, along with the testimony and evidence presented, the undersigned recommends that Defendant's motions be denied.

I. **FINDINGS OF FACT**

Bloomington Police Detective Heather Jensen was investigating Defendant regarding the alleged sex trafficking of minors and sex trafficking by fraud, force, and deception. (Tr. 22:4-22:8). As part of this investigation, she took statements from Minor A, Minor B, and M.H.A. (Tr. 23:8-24:22; 39:1-39:10).

The first interview with Minor A took place in May 2019. (Tr. 25:11-25:15). Minor A stated that a person named "El Tio" led a group of construction workers and that he had paid for sex with Minor B. (Tr. 26:8-26:15). Minor A reaffirmed this statement at a

subsequent interview, which took place in August 2019. (Tr. 26:2-26:7). Minor A also referred to El Tio as "El Viejo." (Tr. 25:24-26:1).

The interviews with Minor B occurred in May 2019 and August 2019. (Tr. 26:20-26:23; 27:14-16). At the August 2019 interview, Minor B referred to a person as both El Tio and El Viejo and stated that Minor B had been paid to have sex with him on several occasions. (Tr. 27:24-28:3). Minor B described this person as older, skinny, "with a big mustache and soul patch and very short hair." (Tr. 28:13-28:15).

Law enforcement learned that El Tio was the leader of construction workers staying at a LaQuinta Inn. (Tr. 28:16-29:20). An employee at the hotel, M.H.A., said she knew this person as "Humberto" and said that he was "skinny with a big mustache." (Tr. 29:4-29:9).

As part of their investigation, law enforcement obtained two photographs of Defendant: (1) his driver's license picture (Ex. 1) and (2) a picture taken following an October 2019 arrest. (Ex. 2). Law enforcement also created a "zoomed in version" of the October 2019 photo. (Ex. 3).

In summer 2019, Special Agent Jeff Anderson was involved in a separate investigation involving Defendant. (Tr. 52:18-52:21). Through that investigation, Anderson conducted an interview with Juan Funes-Gomez. (Tr. 53:2-53:4). In that interview, Funes-Gomez indicated that he knew somebody named Humberto and described that person as "a Mexican who was tall, skinny, and had brown hair." (Tr. 53:9-53:16). Funes-Gomez also knew Humberto as El Tio and said Humberto and his workers stayed at the LaQuinta Inn. (Tr. 53:20-53:22). Law enforcement later showed Funes-Gomez Exhibit

3

1. (Tr. 54:7-54:11). Funes-Gomez identified that person as Humberto or El Tio. (Tr. 54:12-54:14).

In October 2019, Detective Jensen met with Minor B again. (Tr. 34:13-34:16). At that interview, Detective Jensen told Minor B that she would show Minor B a photo and that Minor B may or may not know that person, but to tell the detective if Minor B did. (Tr. 34:21-34:25). Detective Jensen then showed Exhibit 1 to Minor B. (Tr. 34:18-34:20). Minor B said the person was El Viejo and then stated the person was Humberto. (Tr. 35:1-35:4). Detective Jensen did not mention Defendant's name or nicknames to Minor B before showing the photo. (Tr. 35:10-35:13).

Detective Jensen also showed Exhibit 1 to M.H.A. in October 2019. (Tr. 39:1-39:10). Again, Detective Jensen told M.H.A. that she may or may not recognize the person before showing her the photo. (Tr. 39:14-39:18). M.H.A. identified the person in Exhibit 1 as Humberto. (Tr. 39:19-39:20).

In November 2019, Detective Jensen met with Minor A via Facetime. (Tr. 32:21-32:22; 33:6-33:9). At this interview, Detective Jensen explained to Minor A that she was going to show a photograph to Minor A and that Minor A should tell the detective if Minor A knew that person. (Tr. 33:8-33:18). Detective Jensen then showed Exhibit 3 to Minor A. (Tr. 33:2-33:5). Minor A did not know that person. (Tr. 33:19-33:21). A few days after the interview, Minor A texted Detective Jensen and told her that Minor A recognized the individual but did not want to tell the detective initially because Minor A was scared. (Tr. 33:25-34:8). Minor A then identified the person in Exhibit 3 as El Tio. (Tr. 34:5-34:8).

4

## II. CONCLUSIONS OF LAW

### A. Motion to Suppress Electronic Surveillance Evidence (ECF No. 47) and Motion to Suppress All Evidence Obtained from Unlawful Searches and Seizures (ECF No. 49).

Defendant previously moved to suppress all evidence obtained through unconstitutional searches and seizures, as well as all electronic surveillance evidence. At the hearing, Defendant informed the Court that the motion to suppress electronic surveillance evidence was moot. (Tr. 12:20-13:10). In his post-hearing memorandum, Defendant informed the Court that he was waiving all issues related to his motion to suppress evidence obtained through unconstitutional search and seizures. (ECF No. 71, p. 9). The Court therefore recommends that both motions be denied as moot.

### B. Motion to Suppress All Identifications of Defendant Obtained Through Unconstitutional Identification Procedures (ECF No. 48).

Defendant seeks to suppress all identifications made of him by Minor A, M.H.A., and Funes-Gomez.[1] "A two-part test governs the admissibility of identification evidence. First, [courts] determine if the identification procedures were 'impermissibly suggestive.' If they were, [courts] examine the totality of the circumstances to determine whether the suggestive procedures created 'a very substantial likelihood of irreparable misidentification.'" *United States v. Williams*, 340 F.3d 563, 567 (8th Cir. 2003) (quoting *Simmons v. United States*, 390 U.S. 377, 284 (1968)). Courts consider "the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention,

---

[1] Detective Jensen interviewed other individuals as part of her investigation. Some of them identified Defendant as well. Defendant does not, however, challenge their identifications. (*See* ECF No. 71, p. 9 (asking Court to suppress identifications by Minor A, M.H.A., and Funes-Gomez)).

5

the accuracy of his prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation." *United States v. Omar*, 786 F.3d 1104, 1108 (8th Cir. 2015) (quoting *Manson v. Brathwaite*, 432 U.S. 98, 114 (1977)). This standard is applicable to an eyewitness because when "an eyewitness is shown an improper lineup or photo array, undue suggestiveness may be prejudicial because the suggestiveness may cause the eyewitness to falsely recollect the face of the person who committed the offense." *United States v. Dobbs*, 449 F.3d 904, 909 (8th Cir. 2006). "In contrast, when someone already familiar with a suspect is asked to comment on whether a recorded voice or image portrays the suspect, these concerns are absent." *Id.*

The Court recommends the motion to suppress be denied. To begin, nothing in the record suggests the identification procedures used here were impermissibly suggestive. Though the use of a single photograph during the interviews with Minor A, M.H.A., and Funes-Gomez[2] is not ideal, nothing in the record suggests that law enforcement did anything to prompt any witness to identify the individual in the photograph as Defendant. See *United States v. Bissonette*, 164 F.3d 1143, 1145-46 (8th Cir. 1999) (concluding that single photo of defendant was not unduly suggestive because officers did not attempt to influence the identification). Instead, with regard to Minor A and M.H.A., the record clearly establishes that law enforcement asked open-ended questions that did not connect Defendant to any criminal activity. *Compare with United States v. Henderson*, 719 F.2d 934, 937 (8th Cir. 1983) (holding identification procedure was impermissibly suggestive

---

[2] The Government notes that Funes-Gomez has no knowledge of the criminal activity and is not likely to be a witness in this case, thus rendering any motion to suppress his identification of Defendant as moot. Nevertheless, out of an abundance of caution, the Court will consider the issue of his identification anyway.

6

because officer asked witness whether the photo was of a bank robber who stole the person's car). Furthermore, to the extent that Funes-Gomez's identification is relevant, nothing in the record suggests that his identification was the result of suggestive questioning or other improper influence.

Furthermore, even if the identification process used here were impermissibly suggestive, the totality of the circumstances does not suggest "a very substantial likelihood of irreparable misidentification." *Williams*, 340 F.3d at 567. As the Court previously noted, "when someone already familiar with a suspect is asked to comment on whether a recorded voice or image portrays the suspect . . . concerns [about the prejudicial effect of undue suggestiveness] are absent." *Omar*, 786 F.3d at 1109-10 (quoting *Dobbs,* 449 F.3d at 909-10). It is apparent from the record that Funes-Gomez, Minor A, and M.H.A. were each familiar with Defendant before showing them the photographs. Funes-Gomez indicated that he knew "Humberto," described his person in some detail, and stated that Humberto stayed at the LaQuinta Inn. Likewise, M.H.A. also described a person that she knew as Humberto who was staying at the LaQuinta Inn. Because Funes-Gomez and M.H.A. were "already familiar with [Defendant] [and] simply asked an open-ended question about whether they knew him, the identification technique[s] used here did not create a substantial likelihood of misidentification." *Id*. at 1110.

The reliability of Minor A's identification of Defendant is a slightly closer call. Minor A did not identify Defendant the first time Minor A observed the photograph. Instead, Minor A contacted the interviewing detective a few days later to inform her that

7

Minor A recognized him. Minor A also did not describe Defendant's appearance with the same level of detail as M.H.A. or Funes-Gomez.

Nothing in the record, however, suggests that Minor A's decision to contact the detective later and identify the person in the photo as El Tio was the result of improper pressure or influence. In fact, the detective credibly testified that Minor A informed her that Minor A was afraid of El Tio and thus reluctant to identify him. In addition, though Minor A did not describe El Tio physically, it was clear that Minor A was familiar with him, as Minor A had already explained to the detective that El Tio had engaged in sexual contact with Minor B and that he was the leader of construction workers staying at a hotel. Thus, while Minor A did not immediately identify El Tio when first presented the photo, the totality of the circumstances, including Minor A's reasonable explanation for not identifying El Tio in the initial interview, and her familiarity with a person named El Tio do not establish "a very substantial likelihood of irreparable misidentification." *Williams*, 340 F.3d at 567 (citation omitted). For all the forgoing reasons, the Court recommends the motion to suppress the identifications of Defendant be denied.

### III. RECOMMENDATION

Based upon the foregoing, and all files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1. Defendant Humberto Rangel-Torres's Motion to Suppress Electronic Surveillance Evidence (ECF No. 47) be **DENIED** as moot;

2. Defendant Humberto Rangel-Torres's Motion to Suppress All Identifications of Defendant Obtained Through Unconstitutional Identification Procedures (ECF No. 48) be **DENIED**; and

3.  Defendant Humberto Rangel-Torres's Motion to Suppress All Evidence Obtained From Unlawful Searches and Seizures (ECF No. 49) be **DENIED** as moot.

Date: May 22, 2020                                     *s/ Tony N. Leung*
                                                                          Tony N. Leung
                                                                          United States Magistrate Judge
                                                                          District of Minnesota

                                                                          *United States v. Rangel-Torres (2)*
                                                                          Case No. 19-cr-319 (ECT/TNL)

### NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set for in LR 72.2(c).

**Under Advisement Date:** This Report and Recommendation will be considered under advisement 14 days from the date of its filing. If timely objections are filed, this Report and Recommendation will be considered under advisement from the earlier of: (1) 14 days after the objections are filed; or (2) from the date a timely response is filed.