UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America, | File No. 19-cr-319(2) (ECT/TNL) |
| Plaintiff, | |
| v. | **OPINION AND ORDER** |
| Humberto Rangel-Torres, | |
| Defendant. | |

Evan Gilead and Manda M. Sertich, United States Attorney's Office, Minneapolis, MN, for Plaintiff United States of America.

Daniel L. Gerdts, Minneapolis, MN, and Katherian D. Roe, Office of the Federal Defender, Minneapolis, MN, for Defendant Humberto Rangel-Torres.

Defendant Humberto Rangel-Torres is charged with sex trafficking of a minor, in violation of 18 U.S.C. §§ 1591(a), (b)(2), and (c), and 1594(a) and (c), and sex trafficking by force, in violation of 18 U.S.C. §§ 1591(a) and (b)(1), and 1594(a) and (c). Indictment at 2–3 [ECF No. 9]. Rangel-Torres objects to that part of a Report and Recommendation issued by Magistrate Judge Tony N. Leung, ECF No. 78 ("R&R"), recommending the denial of his motion to suppress identification evidence, ECF No. 48. Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.2(b)(3), the objected-to portion of the R&R will be reviewed de novo. Those portions of the R&R to which Rangel-Torres does not object will be reviewed for clear error. *See* Fed. R. Civ. P. 72(b); *Grinder v. Gammon*, 73 F.3d 793, 795 (8th Cir. 1996) (per curiam). The R&R will be accepted.

I[1]

Heather Jensen is a detective with the Bloomington Police Department, Special Investigations Unit.  Tr. 21.  Jensen participated in the investigation leading to the charges in this case.  *Id.* at 22.  As part of her investigative activities, Jensen interviewed several individuals; among these were "Minor A," a 17-year-old female, "Minor B," a 16-year-old female, and "MHA," an adult female.  *Id.* at 23–24, 28–29.

Jensen first interviewed Minor A on May 5, 2019.  *Id.* at 25.  During this interview, Minor A referred to an individual as "El Tio," who she said "had paid for sex with [Minor] B" and "was the kind of boss or leader" of a group of construction workers who were staying at a La Quinta Hotel in Bloomington.  *Id.* at 25, 23.  Jensen was present for a second interview with Minor A on August 13, 2019.  *Id.* at 25.  During this interview, Minor A again made statements about El Tio.  *Id.*  She referred to him also as "El Viejo," and "[s]he "reaffirmed that he was kind of the leader or the boss of the construction workers at the hotel, and again stated that he had purchased sex from [Minor] B and that [Minor] B was sad when he was around."  *Id.* at 26.

Jensen first interviewed Minor B on May 26, 2019.  *Id.*  During that interview, and in other interviews that followed, Minor B did not disclose that she was being sold for commercial sex acts.  *Id.* at 27.  However, in an interview on August 13, 2019, Minor B said that an individual she referred to as "El Tio" and "El Viejo" "was in charge of the construction workers at the hotel and that he was the one that she had been paid to have

---

[1] These facts are taken from an independent review of the transcript of the motions hearing held before Magistrate Judge Leung on March 10, 2020.  ECF No. 68.

2

sex with on several occasions." *Id.* at 27–28.  Minor B said that she had been paid to have sex with this person "at least five or six times," and she described him as "an older gentleman, skinny, with a big mustache and soul patch and very short hair." *Id.* at 28.

Jensen first interviewed MHA on June 19, 2019. *Id.*  MHA was an employee of the Bloomington La Quinta Hotel. *Id.*  During this interview, MHA referred to an individual as "Humberto" and described him as "kind of the boss of the construction workers and in charge of them while at the hotel." *Id.* at 29.  MHA described Humberto as "skinny with a big mustache." *Id.*

To this point, no witness had identified "El Tio" or "El Viejo" by name as Rangel-Torres. *Id.* at 29.  That would happen, or so it seems, as the result of a separate investigation. *Id.* at 52–54.  Jeffrey Anderson, a special agent with Homeland Security Investigations ("HSI"), is one of the lead officers on a team that investigated the "unlawful employment of illegal aliens." *Id.* at 52–53.  As part of that investigation, on September 3, 2019, Anderson participated in interviewing Juan Funes-Gomez. *Id.* at 53.  During that interview, Funes-Gomez said he knew an individual named "Humberto." *Id.*  He described Humberto as "a Mexican who was tall, skinny and had brown hair." *Id.*  He said "that Humberto's workers stayed at the LaQuinta" in Bloomington, and that "he knew him also as El Tio." *Id.*  In a subsequent interview conducted by a different HSI officer on September 12, 2019, Funes-Gomez identified a photograph of Rangel-Torres (taken from his North Carolina driver's license) "as Humberto or El Tio." *Id.* at 54, 31.

After learning this information and obtaining photographs of Rangel-Torres, Jensen met again with Minor A, Minor B, and MHA.  Jensen met with Minor A on November 5,

3

2019. *Id.* at 32. The two did not meet in person on this occasion. *Id.* at 33. Instead, they met by video using cell phones. *Id.* Jensen explained to Minor A that "[she] was going to show her a photo, that she may or may not know who this person is, and if she did, to let [Jensen] know." *Id.* Jensen did not mention Rangel-Torres or any of his nicknames to Minor A before showing her the photo. *Id.* Jensen then showed a photograph of Rangel-Torres to Minor A. *Id.* Minor A said that she did not know the person in the photograph. *Id.* However, two days later, Minor A texted Jensen stating that she had recognized the man in the photograph as "El Tio" but that she was frightened to tell Jensen that during their November 5 meeting. *Id.* at 34.

Jensen met in person with Minor B on October 7, 2019. *Id.* Jensen advised Minor B that she "was going to show her a photo, that she may or may not know who that person is, but if she did, to let [Jensen] know." *Id.* Before showing the photograph to Minor B, Jensen did not mention either Rangel-Torres's name or any of the other names Minor B (or anyone else) had used to describe him. *Id.* at 35. Minor B viewed the photograph and responded that "it was El Viejo and then followed up by saying it was Humberto." *Id.*

Jensen met again with MHA on October 16, 2019. *Id.* at 39. Jensen "explained to her [that she] had a photo [she] needed to show her, that she may or may not recognize this person." *Id.* If she did recognize the person, Jensen asked MHA to "let [her] know." *Id.* MHA then viewed the photograph and "stated that it was Humberto." *Id.*[2]

II

---

[2] Jensen also showed Rangel-Torres's photograph to two other individuals who have been referred to as "Person C" and "Minor D." Tr. 36–38. Rangel-Torres's suppression motion and objections are not directed at these transactions.

4

Rangel-Torres seeks suppression of the identifications of Minor A, MHA, and Funes-Gomez; he does not seek suppression of Minor B's identification. Mem. in Supp. at 8–9 [ECF No. 71]. Rangel-Torres argues that the R&R "completely ignores the well-established law in this Circuit and elsewhere that showing a witness a single photograph of a suspect is almost by definition impermissibly suggestive." Obj. at 1 [ECF No. 79]. In this case, Rangel-Torres argues, "the question 'do you know this person?' is indistinguishable from asking 'Is this the guy we talked about?[']" *Id.* at 3. Rangel-Torres also argues that the R&R improperly placed on him the burden to show that the identifications were the product of impermissible suggestion when, he says, it is the Government's burden to show that the identifications were not impermissibly suggestive.[3] *Id.* Finally, Rangel-Torres argues that Minor A, MHA, and Funes-Gomez lacked familiarity with him necessary to show that their identifications were not likely to result in irreparable misidentification. *Id.* at 4. Magistrate Judge Leung correctly applied controlling law.

"A two-part test governs the admissibility of identification evidence. First, [courts] determine if the identification procedures were 'impermissibly suggestive.' If they were, [courts] examine the totality of the circumstances to determine whether the suggestive procedures created 'a very substantial likelihood of irreparable misidentification.'" *United*

---

[3]   Rangel-Torres's argument that the Government bears the burden to show that the identifications were not impermissibly suggestive is not correct. Controlling precedent is clear that it is a defendant's burden to establish that an identification procedure is impermissibly suggestive. *E.g.*, *United States v. Martin*, 391 F.3d 949, 952 (8th Cir. 2004); *see also Perry v. New Hampshire*, 565 U.S. 228, 253–54 (2012) (Sotomayor, J., dissenting).

5

*States v. Williams*, 340 F.3d 563, 567 (8th Cir. 2003) (quoting *Simmons v. United States*, 390 U.S. 377, 384 (1968)). "In particular, [courts] consider 'the opportunity of the witness to view the criminal at the time of the crime, the witness'[s] degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation.'" *United States v. Omar*, 786 F.3d 1104, 1108 (8th Cir. 2015) (quoting *Manson v. Brathwaite*, 432 U.S. 98, 114 (1977)). Whether a single-photograph display is impermissibly suggestive (or not) depends on the circumstances of each case. *United States v. Bissonette*, 164 F.3d 1143, 1145–46 (8th Cir. 1999) (finding that single-photo identification was not impermissibly suggestive because no "suggested connection" was made between the photograph and a particular crime).

    The totality of circumstances here indicates that, suggestiveness aside, the single-photo identifications of Minor A, MHA, and Funes-Gomez are not likely to result in irreparable misidentification. Minor A's responses to Jensen's questioning indicate that she knew who Rangel-Torres was (though she knew him only as El Tio and El Viejo), that she knew he resided at a La Quinta hotel in Bloomington, that she knew he worked as the boss or leader of a group of construction workers, and that she knew he had paid for sex with Minor B. In other words, Minor A knew Rangel-Torres (if not his legal name), where he lived, what he did for work, and the particular nature of his criminal activity. MHA's knowledge is similarly extensive. MHA knew Rangel-Torres by his first name (Humberto), what he did for work, and though her physical description of Rangel-Torres was somewhat limited, it included a distinctive feature (his mustache) and squared with

6

Minor B's description.  That MHA was an employee of the Bloomington La Quinta Hotel also is significant for it provided her a close, repeated, and extended opportunity to observe Rangel-Torres.  In the course of a separate investigation into different activities, Funes-Gomez said he knew Rangel-Torres, though as Humberto and El Tio.  He described Humberto's appearance generally and said that he knew that Humberto controlled workers who stayed at the Bloomington La Quinta.  Though evidently not familiar with Rangel-Torres's activities that are the subject of this case, Funes-Gomez was familiar with Humberto's role in the employment of illegal aliens that was the subject of the separate investigation.

## ORDER

Therefore, based on all the files, records, and proceedings in the above-captioned matter, **IT IS ORDERED THAT**:

1. Defendant Humberto Rangel-Torres's Objections to the Report and Recommendation [ECF No. 79] are **OVERRULED**;

2. The Report and Recommendation [ECF No. 78] is **ACCEPTED**;

3. The Motion to Suppress Electronic Surveillance Evidence [ECF No. 47] and the Motion to Suppress Evidence from Searches and Seizures [ECF No. 49] are **DENIED** as moot; and

4. The Motion to Suppress Identifications [ECF No. 48] is **DENIED**.


Dated:  July 9, 2020                    s/ Eric C. Tostrud
                                        Eric C. Tostrud
                                        United States District Court

7